164 Ariz. 74 (1990)
790 P.2d 772
John L. BOHN, et al.
v.
Paul WADDELL, et al.
No. TX 89-00050.
Tax Court of Arizona.
April 6, 1990.
*79 Bonn & Jensen, Chartered by Robert A. Jensen, Brian A. Luscher, Phoenix, for plaintiffs-appellants.
Eugene O. Duffy, Milwaukee, Wis., for plaintiffs-appellants.
Atty. Gen. by William D. Hostetler, Gail H. Boyd, Phoenix, for defendants-appellees.
OPINION
MARONEY, Judge.
On March 28, 1989, the United States Supreme Court rendered its decision in Davis v. Michigan Department of Treasury, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). The Davis decision held, as contrary to federal law, certain provisions of Michigan law governing state taxation of income. Michigan imposed a tax on the pension benefits of federal retirees, while exempting from tax similar benefits enjoyed by State of Michigan pensioners.
There are five Plaintiffs herein. Two are retired United States military pensioners, one is a retired United States civil service pensioner, and two are spouses of the military retirees.
On May 1, 1989, Plaintiffs filed suit against the Director of the Department of Revenue, and all former Directors back through 1985. Plaintiffs alleged violations of 42 U.S.C. § 1983, and sought certification of a Plaintiff class of all federal pensioners who paid income tax to Arizona since 1985. The complaint sought a declaration of unconstitutionality, injunctive relief, and damages measured by taxes paid to Arizona on federal pensions. The complaint, as first filed, did not name the State as a Defendant, nor did it make a claim for a tax refund.
Later, the complaint was amended to add a second count alleging as unconstitutional the statute by which Arizona taxed the Plaintiffs' federal pensions. The Department of Revenue was named as a Defendant. On the basis of this count, the Plaintiffs continue to press for a declaration of unconstitutionality, class certification, and injunctive relief. They also seek a refund of all taxes paid on federal pensions from 1984 on. In the amended complaint, the original complaint is repeated as Count 1. Both the original complaint, and the amended complaint are based on the Davis decision.
For all of the tax years material to the issues before the bench, Arizona gross income is equal to federal adjusted gross income. To determine Arizona adjusted gross income, subtractions authorized in A.R.S. § 43-1022 are made to Arizona gross income. Arizona adjusted gross income is further refined into Arizona taxable income, upon which Arizona income tax is assessed. As a result of the foregoing scheme, subtractions taken pursuant to A.R.S. § 43-1022 are exemptions from Arizona State income tax.
When the Davis decision was announced, A.R.S. § 43-1022(3) provided for a subtraction for all benefits from Arizona State retirement systems, and A.R.S. § 43-1022(4) provided for a subtraction for up to $2,500 of income from United States civil service retirement. There was no subtraction provided for pension benefits from any federal retirement program other than civil service. Military retirement income was not exempted from Arizona income tax, neither in whole nor in part.
Shortly after the Davis decision was announced, the Arizona legislature amended A.R.S. § 43-1022 to provide a subtraction for up to $2,500 of income from all federal pensions and all state pensions. Laws, 1989, ch. 312 § 12, 1989 Ariz. Legis. Serv. 1604 (West). The subtraction previously allowed in A.R.S. § 43-1022(3) was repealed. This legislative change reduced the subtraction for state pensions and instituted a subtraction for non-civil service federal pensions so that all federal and state pensions are now treated the same. The amendment to A.R.S. § 43-1022 is effective *80 for the tax year 1989 and subsequent years.
It is safe to say that the legislature was motivated by the Davis decision to make the change that it made to A.R.S. § 43-1022. It was the intent of the amendment to reform Arizona law so that it would comply with what was mandated by Davis: that is, that both federal and state pensions be treated the same.
The Court declares that the scheme for taxing federal and state pensions, as existed before the recent amendment to A.R.S. § 43-1022, was in violation of federal law, and further, was in violation of the federal constitutional doctrine of intergovernmental tax immunity.
The Court grants summary judgment to all Defendants on Count 1, holding such Defendants have an immunity from suit under 42 U.S.C. § 1983 because the acts complained of were all done in the performance of official duty, and the Plaintiffs' rights were not clearly established before the Davis decision.
The Court grants summary judgment to the Plaintiffs and against the Department of Revenue on Count 2 and makes such further orders in resolution of the Plaintiffs' suit as are reflected in this decision and in the Court's minute order of the same date.
The Court further holds that the Plaintiffs need not exhaust administrative remedies before bringing suit in this Court, and that Plaintiffs have failed to demonstrate the need for injunctive relief.
Pursuant to A.R.S. § 12-1841 and the doctrine of virtual representation, the Court directs the Department of Revenue to treat all persons who paid Arizona income tax on federal pensions for tax years 1984 through 1988 as though each such person were a Plaintiff herein. Because of the foregoing, the Court holds that certification of a Plaintiff class is neither necessary nor expedient.
The Department of Revenue is directed to refund a portion of Arizona income taxes paid by each Plaintiff, and all persons similarly situated, according to the following formula. In addition to the tax refund directed herein, the Department is to pay interest to each taxpayer at such rates as the Department pays when income tax overpayments are refunded.
To determine the amount of the refund due the taxpayer, two computations must be made. The first step is to multiply .0275 times the highest Arizona tax rate paid, times the taxpayer's federal pension income. If income has been subtracted pursuant to A.R.S. § 43-1022(4), the amount of such income multiplied by the taxpayer's highest Arizona rate must be subtracted from the amount determined in step one. No more tax can be refunded than was paid.
Refunds are to be made for tax years 1984 through 1988. Applications for such refunds may be made up until the first April 15th two years after this decision becomes final or until the expiration of the term provided in A.R.S. § 42-115, whichever is later.
In the balance of this opinion, the Court will discuss in detail the facts determined, and the law which applies.
Application of the Decision in Davis to the Arizona Scheme
Paul Davis, a resident of Michigan, received retirement benefits pursuant to the United States Civil Service Retirement Act. Michigan defined taxable income in a manner that excluded all retirement benefits received from the state or its political subdivisions, but included federal retirement benefits. Davis sued the Michigan Department of the Treasury for "refunds of state taxes paid on his federal retirement benefits." Davis, 109 S.Ct. at 1503.
Davis claimed that the state's inconsistent treatment of state and federal retirement benefits discriminated against federal retirees in violation of 4 U.S.C. § 111. The United States Supreme Court, in an opinion written by Justice Kennedy, agreed with Davis.
4 U.S.C. § 111 was enacted as part of the Public Salary Tax Act of 1939. The purpose of the Public Salary Tax Act was to *81 provide for federal income taxation of the salaries of state and local government employees. 4 U.S.C. § 111 states:
The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States, a territory or possession or political subdivision thereof, the government of the District of Columbia, or an agency or instrumentality of one or more of the foregoing, by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.
Justice Kennedy said the meaning of 4 U.S.C. § 111 is "unmistakable."
It waives whatever immunity past and present federal employees would otherwise enjoy from state taxation of salaries, retirement benefits, and other forms of compensation paid on account of their employment with the Federal Government, except to the extent that such taxation discriminates on account of the source of the compensation.
Davis, 109 S.Ct. at 1505.
In analyzing the Davis opinion, one needs to consider that the typical American wage earner is subject to two governments, one the state, and one the United States. The immunity to which Justice Kennedy refers is an immunity from taxation by one government once enjoyed by the employees of the other government. This immunity was established as a corollary of the doctrine of intergovernmental tax immunity, a doctrine first advanced in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).
The tax immunity enjoyed by state and federal employees met its virtual demise in the late 1930's with decisions in Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938), and Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939). Helvering held that the United States could impose a tax on the salaries of state employees, and Graves held that states could impose a tax on the incomes of federal employees.
Most of the legislative process which resulted in the passage of the Public Salary Tax Act took place after Helvering, but before Graves. According to Justice Kennedy, Congress was uncertain just what immunity might still have been available to federal employees from state taxation of their income. 4 U.S.C. § 111 was enacted to expressly waive, on behalf of the United States, whatever immunity there was to non-discriminatory taxation.
4 U.S.C. § 111 did not, however, waive all immunity from state taxation of the income of federal employees. The final clause of the statute excepts from such waiver state income taxes which discriminate on the basis of the source of the federal employee's compensation.
In the Davis decision, the Supreme Court made three determinations that are important in applying the case to the Arizona income tax scheme. These determinations are:
[One] The retention of immunity in § 111 is coextensive with the prohibition against discriminatory taxes embodied in the modern constitutional doctrine of intergovernmental tax immunity.

Davis, 109 S.Ct. at 1506.
[Two] Michigan's tax system discriminates in favor of retired state employees and against retired federal employees.

Id. at 1507.
[Three] The Michigan Income Tax Act violates principles of intergovernmental tax immunity by favoring retired state and local government employees over retired federal employees.

Id. at 1508.
Davis suggests that the doctrine of intergovernmental tax immunity will not be violated if inconsistent tax treatment can be justified by "significant differences" between those favored and those not favored. Id. (citing Phillips Chemical Co. v. Dumas Independent School Dist., 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960)). The opinion, however, does not identify any justifiable differences.
Michigan advanced as significant differences two circumstances. First, Michigan used the promise of income tax exemption *82 of state pensions as an inducement to obtain and keep qualified civil servants. Second, federal pay and retirement benefits were substantially better than those of Michigan. The Davis Court rejected both of these arguments. Both of these arguments were made in the present case by the Department of Revenue.
The Davis opinion does not furnish a defined standard by which to determine what relationships need exist between classes of taxpayers in order for a state tax system to be discriminatory, and therefore violative of intergovernmental tax immunity. If the Michigan and Arizona schemes were the same, the similarity would be enough to declare the Arizona system flawed.
They are not the same, however. Michigan, as far as can be told from Davis, has only two classes of taxpayers whose benefits and liabilities have to be considered. Arizona has three.
"It is undisputed that Michigan's tax system discriminates in favor of retired state employees and against retired federal employees." Davis, 109 S.Ct. at 1507.
The foregoing statement contains all the rationale and all of the authority to be found in the Davis opinion for its affirmative holding that the Michigan system discriminates. Such an assertive pronouncement without further explanation shouts the obvious. Any difference in the tax treatment of government service retirees is a discrimination for purposes of 4 U.S.C. § 111.
The Davis opinion defines an appropriate remedy for Michigan to be "a mandate of equal treatment." Id. at 1509.
The income tax treatment of state and federal pensions cannot be equal if the treatment of all federal pensions is not the same. The Court finds that A.R.S. § 43-1022, subsections 3 and 4, discriminates in favor of Arizona State retirees, and against federal retirees. It also discriminates in favor of federal civil service retirees, and against other federal retirees.
Pursuant to the Arizona Uniform Declaratory Judgment Act, A.R.S. § 12-1831 et seq., the Court declares that so much of the Arizona State income tax system as was implemented by A.R.S. § 43-1022, subsections 3 and 4, as such statute existed prior to the tax year 1989, to have been in violation of 4 U.S.C. § 111, and in violation of the federal constitutional doctrine of intergovernmental tax immunity.
Motions for Summary Judgment
Count 1 of the amended complaint alleges claims against the individual Defendants based on a violation of 42 U.S.C. § 1983. According to the complaint, the individual Defendants, acting under color of state law and by dint of the enforcement power of the Arizona State income tax law, have imposed a tax on the Plaintiffs' federal pensions. Furthermore, say the Plaintiffs, these Defendants will continue to impose such a tax. The Plaintiffs claim such acts violate rights, privileges, and immunities guaranteed the Plaintiffs under the federal Constitution.
The Defendants filed a motion to dismiss the complaint, or in the alternative, for summary judgment. The motion was supported by affidavits. The motion was filed before the complaint was amended, when the only claim pressed by Plaintiffs was a § 1983 claim.
Plaintiffs responded to the Defendants' motion with a cross-motion for summary judgment. Plaintiffs also sought to amend the complaint, as indicated above. The motion to amend was granted. The Plaintiffs' cross-motion for summary judgment was also supported by affidavits. Additional motions for summary relief were filed. In the course of further proceedings, much argument and authority on all issues were presented to the Court. Both parties had adequate opportunity to bring to the bench any matter they might have wished to present on the issues framed in the complaint. The Court considered the affidavits of the parties in deciding the motion and cross-motion. The Court therefore considers the motions to be cross-motions for summary judgment encompassing all claims set out in the amended complaint. Rule 12(b), A.R.C.P.; Parks *83 v. Macro-Dynamics, Inc., 121 Ariz. 517, 519-20, 591 P.2d 1005, 1007-08 (App. 1979).
The Plaintiffs' Section 1983 Claim
There are two considerations which bear upon an evaluation of the Plaintiffs' § 1983 claim. The legislative change in A.R.S. § 43-1022, which took place shortly after the Supreme Court opinion in Davis was published, removed as an issue in this litigation any purported civil rights violations for acts relative to tax years 1989 and after.
In addition, in all of their allegations claiming outrageous conduct by the Defendants, the Plaintiffs assume a right to total exemption from taxation of their pension income. The Court does not find that such a right exists.
In support of their motion, the Defendants argue the Court lacks jurisdiction because the Plaintiffs have failed to exhaust their administrative remedies. More will be said later about whether the Plaintiffs must exhaust administrative remedies as a pre-condition to their suit for a refund of an illegally collected tax. The Defendants' motion, however, was directed to Plaintiffs' § 1983 claim against the individual Defendants.
The recent decision of the Arizona Court of Appeals in Zeigler v. Kirschner, 162 Ariz. 77, 79, 781 P.2d 54, 55 (App. 1989) is dispositive of Defendants' argument. In Zeigler, the Court said, "... a state court may not condition a plaintiff's § 1983 rights upon the exhaustion of state administrative remedies."
In so ruling, the Court of Appeals relied on Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); and Patsy v. Board of Regents of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Based on the foregoing authorities, this Court holds that the Plaintiffs need not exhaust administrative remedies before pursuing a claim against the individual Defendants premised on 42 U.S.C. § 1983.
In reviewing the original complaint, the one to which the Defendants' motion is addressed, this Court concludes that it is directed at the individual Defendants in their individual capacities. The Department was not named as a Defendant, nor are allegations made which suggest that the thrust of Plaintiffs' claim for relief is directed at Defendants in their "official" capacity. Plaintiffs' memoranda in opposition to the Defendants' motion, and in support of their own motion for judgment is consistent with the Court's conclusion.
Nevertheless, certain allegations in the Plaintiffs' amended complaint might leave open the issue of whether the Plaintiffs make a claim against the state, or against the individual Defendants in their official capacity. Having thus waved at these issues in passing, the Court can now quickly put them to rest.
Throughout its long meandering course, federal civil rights law has struggled with whether a state is a person and thus subject to suit under § 1983. It has also wrestled with the dichotomy of official and individual capacities. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). See also the differing views of the justices in concurring and dissenting opinions in Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), and Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).
A recent case from the United States Supreme Court, however, has settled both of these issues, at least for the time being. "Neither a state nor its officials acting in their official capacities are `persons' under § 1983." Will v. Michigan Dep't of State Police, ___ U.S. ___, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Based on Will, this Court holds that the Plaintiffs have no claim based on 42 U.S.C. § 1983 against the State or against the individual Defendants in their official capacities.
The Court now considers the Plaintiffs' claim for money damages against the individual *84 Defendants. These Defendants have raised the defense of a qualified immunity.
In Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the United States Supreme Court was faced with the issue of whether state officials were immune as individuals from suits for damages pursuant to 42 U.S.C. § 1983. The officials in Scheuer claimed immunity as to all acts performed within the scope of their official duties. The Supreme Court held that state officials in the executive branch of government did not have absolute immunity from suit in such a circumstance. The Court further held that such officials did have a qualified immunity from such suits, however.
The Scheuer Court elected not to define "qualified immunity", but did suggest that it was based on a reasonable good faith belief that would justify the acts upon which the complaint was based. Scheuer, 416 U.S. at 247-48, 94 S.Ct. at 1692.
42 U.S.C. § 1983 provides for a cause of action against officials of state government for alleged civil rights violations. In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court defined a cause of action against federal officials for the same conduct proscribed to state officials by § 1983.
In determining whether a qualified immunity exists, federal law does not distinguish between a § 1983 claim against state officials, or a Bivens type claim against federal officials. Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).
Immunity defenses made in § 1983 claims are controlled by federal law. Hampton v. City of Chicago, 484 F.2d 602 (1973). The defense is an affirmative one that must be pleaded. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).
The standard for deciding whether a sued official is entitled to effectively assert a qualified immunity defense is an objective one. Government officials in the exercise of their official duties are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). See also Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).
In Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), decided after Harlow, the United States Supreme Court stated: "A plaintiff who seeks damages for violation of constitutional and statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." Scherer, 468 U.S. at 197, 104 S.Ct. at 3021.
The Court interprets this language to place the burden on the Plaintiff to establish that the rights which the Plaintiff claims were violated were rights that were clearly established at the time of the alleged violations.
In further defining qualified immunity, the Supreme Court said: "[t]he entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original).
Defendants have pled the defense of a qualified immunity. All of the conduct of the Defendants of which the Plaintiffs complain was committed by the Defendants in the performance of their official duties as Directors of the State Department of Revenue. Indeed, all acts complained of were acts dictated by the then law of the State. Therefore, unless the allegedly violated rights of the Plaintiffs were clearly established at the time the alleged violations occurred, the Defendants are entitled to rely on their immunity defense.
*85 Defendants are also entitled to an early resolution of the issue. Mitchell, supra. Plaintiffs have properly pled their § 1983 claim. Gomez, 446 U.S. at 640, 100 S.Ct. at 1923. Therefore whether Defendants' immunity defense is dispositive of Plaintiffs' § 1983 claim for damages cannot be resolved in a Motion to Dismiss. As previously indicated, however, the Court considers Defendants' motion as one for summary judgment.
The Plaintiffs bear the burden of demonstrating that the rights they claim were violated were rights clearly established at the time that the violations occurred. They have been given an adequate opportunity to advance whatever evidence on this point they deem to be appropriate.
Having properly raised a defense of qualified immunity, Defendants have a right to have the viability of the claimed defense determined at an early stage in the proceedings. Defendants have a right to have it determined before discovery on the merits. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.
Before a determination can be made whether rights were clearly established, the rights in issue must be identified. Actually, there is only one right involved here. Plaintiffs base their § 1983 claim on Davis v. Michigan. The only right which the Plaintiffs could claim Davis defined for them was a right to have their federal pension benefits taxed the same as were state pension benefits.
Plaintiffs claim that Defendants knew, or should have known, that such a right was clearly established during the relevant tax years. In support of this position, Plaintiffs cite a report by a State Tax Commission accountant written in 1939, and a more recent expression of opinion by a State legislator. The report is too remote in time, and the legislator's opinion too removed from a Department director's employment universe, to be imputable to these Defendants. More importantly, such data is not relevant.
The determination of whether the right defined above was clearly established at the time the right was said to be violated is a matter of law to be determined by the Court. It is to be gauged on an objective standard. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.
The Arizona tax scheme, which the Court herein has declared to be in violation of federal law, was in place for a minimum of 25 years before Davis. There is no record that it ever was, before this lawsuit, attacked in any court. Justice Stevens, in his dissent in Davis, indicated that there were at least 14 states other than Michigan that granted tax benefits to state and local pensioners not granted to federal pensioners. Davis, 109 S.Ct. at 1511. Information supplied to the Supreme Court of Missouri indicates at least 21 states have similar provisions. Hackman v. Director of Revenue, 771 S.W.2d 77 (Mo. banc 1989) (Welliver, J., dissenting). The Plaintiffs provided an exhibit that suggests that as many as 23 states may be affected by the Davis decision.
The pervasiveness of the scheme, as well as its long life without challenge, are indications that the law which creates the right was not clearly established before Davis. These characteristics do not dispose of the issue, however.
If the language of the statute violated is unequivocal, considered in light of existent authority, and the impermissible act a plain violation, the prevalence of the wrong is not enough to overcome the certainty of the statutory language.
This Court must therefore consider, whether, as a matter of law, the plain language of 4 U.S.C. § 111 was such that a reasonable person would have known that the statute proscribed the disparate Arizona income tax treatment of state and federal pensions. The Court holds that it was not.
The statute reads, in relevant part:
The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.
*86 The statute does not address retirement income. It speaks of "pay" and "compensation for personal services" for "officers" and "employees," but does not specifically refer to income received by retired federal employees. The language of the non-discrimination clause is conditional, but it is not prohibitory. On its face, the statute does not conflict with pre-Davis A.R.S. § 43-1022.
Justice Kennedy, in writing for the Supreme Court in Davis, felt differently. He wrote, "the plain language of the statute dictates" that it applies to retired pay. Davis, 109 S.Ct. at 1504. Even so, this Court is of the view that, on this score, the statutory language leaves room for argument. Justice Kennedy acknowledged that Michigan's contention (that § 111 did not address retirement income), while hypertechnical, "was not inconsistent with the language" of the statute. Id.
Even if it were to have been clearly established before Davis that 4 U.S.C. § 111 included within its ambit retired pay, it was not clear that the Michigan scheme was an unconstitutional discrimination. The Supreme Court cites no precedent for its holding that virtually any difference is a discrimination under the statute. The Court further points out that discrimination under 4 U.S.C. § 111 is defined by a stricter standard than discrimination under the equal protection clause, from which most of the federal law interpreting discrimination has come. Id. at 1508. The justification for giving favorable tax treatment to state pensioners offered by Michigan in Davis, and the Department here (see page 779, ante), is sustainable under equal protection standards. J.C. Penney Co. v. Arizona Dep't of Revenue, 125 Ariz. 469, 610 P.2d 471 (App. 1980); Flagstaff Vending Co. v. City of Flagstaff, 118 Ariz. 556, 578 P.2d 985 (1978).
The Davis Court based its holding on "principles of intergovernmental tax immunity," a most esoteric of constitutional philosophies. As the Supreme Court points out in its detailed opinion, the direction taken by the clearly established law of intergovernmental tax immunity, from McCulloch v. Maryland to Davis v. Michigan, has hardly been a straight line. See Davis v. Michigan, supra; Davis v. Michigan, 109 S.Ct. 1509 (Stevens, J., dissenting). See also Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939); Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938).
Justice Stevens, in a strongly worded dissent in Davis, expressed the following opinion. "Once one understands the underlying reason for the McCulloch holding, it is plain that this tax [Michigan's income tax] does not unconstitutionally discriminate against federal employees." Davis, 109 S.Ct. at 1511 (Stevens, J., dissenting).
If justices of the United States Supreme Court cannot agree that the right defined in Davis was clearly established before Davis, it hardly seems appropriate to charge the individual Defendants in this case with such perspicacity.
By virtue of the foregoing, the Court holds that the right which the Plaintiffs claim the individual Defendants violated was not clearly established before Davis was decided. As Justice Powell observed, in his dissent in Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (Powell, J., dissenting): "Constitutional law is what the courts say it is." Until the Davis decision, the courts had not said what the law was with respect to income tax schemes such as those in place in Michigan and Arizona.
The Need to Exhaust Administrative Remedies
Defendants urge that Plaintiffs' claim for a refund should be dismissed, as the Plaintiffs did not exhaust administrative remedies before filing suit. In their memoranda, Defendants cite A.R.S. § 42-129 as providing the only authority under which the Plaintiffs could claim a tax refund. A.R.S. § 42-129 authorizes refunds where the Department determines there has been an amount of tax paid in excess of the amount due. A.R.S. § 42-129(D) provides that a claim for refund "be in writing and shall state the specific grounds on which it *87 is founded." The Court is of the view that such generic language is insufficient to insure a remedy if the Plaintiffs' claims are well founded.
Defendants argue that the only avenue of relief open to Plaintiffs was to have filed a claim for refund with the Department pursuant to A.R.S. § 42-129. Furthermore, if such a claim were to be rejected, Plaintiffs would have to exhaust their appeal rights before the State Board of Tax Appeals before coming to the Tax Court.
Defendants cite numerous Arizona cases which stand for the proposition that a party must exhaust administrative remedies before he or she can come to Superior Court.
The Court's review of these authorities, however, reveals that the proposition upon which the Defendants rely is subject to numerous qualifications and exceptions. In the first place, the issue which the claimant brings to the court must have first been cognizable on the administrative level. Minor v. Cochise County, 125 Ariz. 170, 608 P.2d 309 (1980).
Here the issue which gives rise to the Plaintiffs' claim is whether a taxing statute is constitutional, an issue which cannot be resolved on the administrative level. An administrative body has no power to determine whether a statute complies with a constitution. Manning v. Reilly, 2 Ariz. App. 310, 408 P.2d 414 (1965); Prisk v. City of Poulsbo, 46 Wash. App. 793, 732 P.2d 1013 (App. 1987); Belco Petroleum Corp. v. State Bd. of Equalization, 587 P.2d 204 (Wyo. 1978).
Furthermore, exhaustion of administration remedies is not necessary if the administrative process prescribed would not provide an adequate remedy. Town of Paradise Valley v. Gulf Leisure Corp., 27 Ariz. App. 600, 557 P.2d 532 (App. 1976).
Plaintiffs' claim is premised upon the United States Supreme Court decision in Davis, announced some five weeks before this suit was filed. The Defendants have not made any showing that, at the time the complaint was filed, the Department had in place an administrative process which would provide the relief Plaintiffs are seeking. Indeed, the only evidence on the point, proffered by the Plaintiffs, reflects just the opposite. The public comment on the Davis decision by the Department was that the Department would await a judicial determination before it would recognize any claim based on Davis.
For the foregoing reasons, the Court holds that the Plaintiffs need not have sought relief from the Department or from the State Board of Tax Appeals before coming to the Superior Court.
The Plaintiffs' Claim for Injunctive Relief
In their complaint, Plaintiffs seek to have the Court enjoin Defendants from further enforcement of the Arizona law which imposed an income tax on their federal pensions. Since the Arizona legislature has repealed what was A.R.S. § 43-1022(3), enforcement of the offending tax scheme for tax years beyond 1988 is no longer a duty imposed on the Department. Therefore, there is no need for an injunction to proscribe conduct with respect to tax years beyond 1988.
Plaintiffs also seek to have the Court enjoin further collection of taxes due but not paid by federal retirees for years prior to 1989. It is not clear to the Court whether Plaintiffs seek to enjoin collection of all delinquent income taxes or just that portion of the taxpayer's supposed liability which is attributable to his or her federal pension.
It does not matter. Plaintiffs predicate their claim for all relief, including injunctive relief, on an assumption that there is no Arizona income tax liability on their pension income. This Court does not so find. In order for the Court to enjoin the Department of Revenue as Plaintiffs urge, the Court must find that, without such an injunction, Plaintiffs, or members of their class, will suffer irreparable harm. Weinberger v. Romero-Barcelo, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); Quechan Tribe of Indians v. Rowe, 531 F.2d 408 (9th Cir.1976); Calvary Baptist Church at Tyler v. Adams, 570 S.W.2d 469 *88 (Tex.Civ.App. 1978); Pearson v. Baldwin, 125 Cal. App.2d 670, 270 P.2d 866 (1954).
This Court has determined as excessive only a small portion of the income tax assessed an individual federal retiree in recent years. A taxpayer who, as a result of the Department's continuing collection effort, pays a tax that is later determined to be illegal as a result of the decision in Davis may have it refunded with interest. Suspending, or otherwise inhibiting, the Department's tax collection effort against all federal retirees would result in little ultimate benefit to the federal retiree taxpayer, even if preventing some illegal tax collection was the result. On the other hand, a serious disruption in the conduct of the Department's business could occur. This would be to the detriment of, not only the Department, but all non-federal retiree taxpayers in the State.
In summary, the Court finds that, if the injunction is not issued, the putative class members will suffer no irreparable harm. Therefore the Court declines to order injunctive relief.
Class Certification
Plaintiffs seek to have the Court certify a Plaintiff class, pursuant to Rule 23 of the Arizona Rules of Civil Procedure. Applying the rule to the facts and issues in this case, it provides that the Plaintiffs may sue the Department of Revenue as representatives of a class of taxpayers similarly situated to themselves, "only" if:
(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.
In order for the suit to be maintained as a class action, in addition to all of the foregoing, one of the following must also exist:
(A) The prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications which would establish incompatible standards of conduct for the Department.
(B) The prosecution of separate actions by individual members of the class would create a risk of individual adjudications which would adversely affect the interests of other members of the class who are not parties to the adjudication.
(C) The Department has acted or refused to act on grounds generally applicable to the proposed class thus making appropriate injunctive or declaratory relief with respect to the Plaintiff class.
(D) The Court finds that the questions of law and fact common to the class as a whole predominate over questions affecting only individual members, and, that a class action is superior to other available methods for adjudicating the controversy.
Rule 23 further provides that, as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be maintained as a class action. It is the determination of this Court that this action shall not be maintained as a class action.
There appears to be no dispute but that qualifications 1 and 2, as identified above, exist. The existence of qualifications 3 and 4 is temporized by the fact that the Plaintiffs' claim to represent two groups of class members whose interests are not identical. Indeed, their interests may well be in conflict. The impact of the offending tax scheme did not fall the same on federal civil service retirees as it did on those receiving other federal pensions.
Even so, the Court is not prepared to say that a class action could not be maintained because of a lack of typicality, or because of inadequate representation. Such a determination would necessarily await further evidence.
The issue is academic, however. The Court finds that none of the qualifications *89 identified as A through D, above, exist in this case.
Whether a suit should be allowed to proceed as a class action is within the discretion of the court. Godbey v. Roosevelt School Dist. No. 66, 131 Ariz. 13, 638 P.2d 235 (App. 1981). If the court determines that the qualifications set forth in the rule for such an action do not exist, certification of a class should be denied. Lewis v. Heckler, 752 F.2d 555 (11th Cir.1985).
Without the time and expense of a class action, this Court has, in this decision, made a declaration of Plaintiffs' rights as such rights are affected by Davis v. Michigan. This declaration is made pursuant to the Arizona Uniform Declaratory Judgment Act, A.R.S. § 12-1831 et seq. A.R.S. § 12-1841 provides that "no declaration shall prejudice the rights of persons not parties to the proceeding."
The Court holds that, if, as a result of this lawsuit, the Department were to grant relief to a Plaintiff herein, and to deny similar relief to another taxpayer similarly situated, such disparate treatment of members of the same class would be an unlawful discrimination and would prejudice the rights of the non-Plaintiff taxpayer. Therefore, if the Plaintiffs prevail, in order to comply with A.R.S. § 12-1841, the Department must treat all taxpayers in the situation of the Plaintiffs just as they treat the Plaintiffs.
In opposing certification of the Plaintiff class, the Department argued that a class action was unnecessary, as the doctrine of virtual representation would require the Department to treat all federal pensioners the same as this Court's judgment herein would require the Department to treat the Plaintiffs. Even setting aside the issue of the applicability of virtual representation, the Department, through its attorneys, represented that it would consider relevant final orders of this Court in this lawsuit just as applicable to members of the purported Plaintiff class, as to the named Plaintiffs themselves. The Court holds the Department bound by its representation.
The doctrine of virtual representation provides that a judgment or decree may adjudicate the rights of a person not a party to the adjudication, if the absent party is so well represented by a party who is before the court, that the interests of the absent party receive actual and efficient representation. The doctrine rests on considerations of necessity, convenience, and efficiency in the administration of justice. 30A C.J.S. Equity § 145 (1965) et seq.; Hale v. Hale, 33 N.E. 858, 146 Ill. 247 (1893); Wiley v. Schorr, 594 S.W.2d 484 (Tex.Civ.App. 1979). Its application is within the discretion of the court. Noble v. Gadsden Land & Improvement Co., 133 Ala. 250, 31 So. 856 (1902).
The doctrine of virtual representation is a slightly redesignated descendant of a long established rule of equity known as the doctrine of representation. The definitions of the doctrines of representation and virtual representation are the same. The historical root of a court's jurisdiction to administer class actions lies in the doctrine of representation. 30A C.J.S. Equity § 145 (1965); Hale, 33 N.E. at 868; Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Covert v. Nashville, C. & St. L. Ry., 186 Tenn. 142, 208 S.W.2d 1008 (1948); Simpson v. Mulle, 358 Mich. 441, 100 N.W.2d 490 (1960). See also Ross v. Arkansas Communities, Inc., 258 Ark. 925, 529 S.W.2d 876 (1975).
Virtual representation arises from the circumstances of the litigation itself. It does not depend on the formal creation of a class. While a class action may proceed within the scope of the doctrine, representation in a class action is created by the court during the progress of the litigation.
Representation through a class action provides certain advantages. Notice of the representation is given to all prospective class members before litigation of the issues commences, and the scope of the liability of the party opposing the class is specifically defined.
The administration of class actions, however, is very expensive. The time which *90 passes from complaint to final order in such actions tends to be much longer than in cases which are not class actions. Class actions also consume more judicial resources than other kinds of civil cases, resources which would otherwise be available elsewhere.
If the standard of efficient representation is maintained, non-parties represented by virtual representation without a class action have the advantage of having their rights determined by a less expensive, more expedient proceeding than a class action.
Arizona recognizes the doctrine of virtual representation without a class action. El Paso Nat. Gas Co. v. State, 123 Ariz. 219, 599 P.2d 175 (1979). In order to insure that the standard of efficient representation is maintained, application of the doctrine by a court demands the utmost caution. Id. at 222, 599 P.2d at 178.
The doctrine is most commonly found in litigation in which one of the parties is a government entity, and the other party or parties are persons subject to the authority of the government party. The issue which the Court is asked to determine is whether the government party has encroached upon a right or interest of the non-government party. In all cases, the non-government party shares with numerous non-parties the same relationship with the government party. Gist v. Stamford Hospital Dist., 557 S.W.2d 556 (Tex.Civ.App. 1977); Seibert v. City of Columbia, 461 S.W.2d 808 (Mo. banc 1971), Williams v. Board of Sup'rs of DeSoto County, 139 Miss. 78, 103 So. 812 (1925).
As the Arizona Supreme Court said in El Paso Nat. Gas Co. v. State, "This general principle has been applied to litigation instituted by a taxpayer to determine a public right or matter of public interest so that any judgment rendered therein would bind all other taxpayers." Id. at 222, 599 P.2d at 178.
The Mississippi Supreme Court defined the doctrine as follows:
Actions of this character are governed by the principle that a taxpayer's suit against the governing board of a county or municipality involving questions of general interest to taxpayers prosecuted in good faith are binding upon all taxpayers as fully as if they had been made actual parties to the proceeding.
Williams, 139 Miss. at 79, 103 So. at 812.
This Court sees no distinction between the state as a party, and a county or municipality. Nor does it see any reason to distinguish between taxpayers subject to income tax rather than a property tax.
In this case, identifying the members of the purported class is peculiarly within the resources of the Defendant Department of Revenue. The posture of this litigation is such that no affirmative relief can be obtained against the non-party class members, even for the costs of litigation. The Defendant does not resist application of the doctrine, and the Court has jurisdiction to order relief for the entire class, not just the named Plaintiffs. Most important of all, Plaintiffs have thoroughly, even exhaustively, presented to the Court the position of the taxpayer class on what Davis v. Michigan requires of Arizona.
The Court holds that, in the absence of a fact or circumstance which affects the representative capacity of the named taxpayer, where a taxpayer, pursuant to an application for declaratory relief, obtains a judgment, decree, or order against a taxing authority, such judgment, decree, or order, or the benefits thereof, applies to all other taxpayers, similarly situated to the complaining taxpayer, the same as to the taxpayer who made the application.
Pursuant to the foregoing, the Court directs the Department of Revenue to treat all federal retirees who have paid Arizona income taxes within the applicable time period as though they were named Plaintiffs herein.
The Court, having taken the stand set forth above, and considering the qualifications identified as A through D above, finds that none of such qualifications for a class action exist.
*91 Notice to Affected Taxpayers
Immediately upon the judgment herein becoming final, the Department is to create such forms as it feels to be expedient to effect the refund ordered herein. Once such forms are created, the Department is to mail them, along with adequate instructions, to all persons who have paid income tax to the State of Arizona on income which includes federal pension income paid to the retiree during any tax year from 1984 through 1988, inclusive.
In addition, the Department is to publicize the entitlement to refund in all media which it calculates may reach the attention of any person to whom to such a refund may be due. The media to which the Department circulates information is to be that which the Department deems to be adequate to reach all of the affected class, but not less than as described by the Departments' attorneys on page 5 of its memorandum filed October 13, 1989, captioned, "Submission of Defendant Departments' Plan to Implement Final Judgment Without Class Certification."
Theory of Remedy
The Plaintiffs argue that the remedy mandated to this Court by the Davis decision is a refund, plus applicable interest, of all taxes paid Arizona by federal pensioners, to the extent such taxes were paid from the pensioner's pension.
The Plaintiffs cite to the Court Hackman v. Director of Revenue, 771 S.W.2d 77 (Mo. banc 1989), decided by the Supreme Court of Missouri on May 25, 1989. Hackman is to Missouri as Bohn is to Arizona. Missouri in Hackman, like Arizona in Bohn, was faced with reconciling Davis v. Michigan with the State's discriminatory tax scheme. It was the decision of the Hackman court to refund to Hackman (only) all the roughly $2,300 he claimed as a refund. In doing so, the Missouri court acknowledged that it was establishing a precedent that would likely provide full refunds for those taxpayers who could establish their claims pursuant to Missouri law. 771 S.W.2d at 82.
This Court is not persuaded by the decision in Hackman. Hackman holds that Missouri law requires that an overpayment of taxes be refunded and that "an overpayment includes those income taxes collected illegally under a taxation scheme which violates principles of intergovernmental tax immunity". 771 S.W.2d at 81.
It is not clear from the Hackman opinion why the Missouri court found that all of the taxes collected from federal retirees were illegally collected. In Hackman, it appears that the only issue considered by the court was whether Davis should apply prospectively or retrospectively. With Missouri, it was all or none.
The Department argues that the cost to Arizona of such a refund as the Plaintiffs seek would be 261 million dollars, an amount so large that it would endanger the financial integrity of the state. Department of Revenue, Second Supplemental Statement of Facts, filed August 29, 1989. Combined with the other circumstances present in this case, applicable law permits the Court to order no retrospective remedy at all. The Department urges the Court to so hold.
Where a violation of law results in economic loss, that a successful Plaintiff should recover that economic loss is a fundamental proposition of the law of civil remedies. That the violation of law is also a violation of the federal Constitution does not diminish the validity of the basic proposition, although state law may affect its implementation. Furthermore, there are situations where the impact of an unforeseen interpretation of the federal Constitution is so significant that a state is permitted to apply its remedy prospectively only. Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); National Can Corp. v. Department of Revenue, 109 Wash.2d 878, 749 P.2d 1286 (1988).
The leading authority on when a state may apply, prospectively only, a remedy for a violation of the Constitution is Chevron Oil Co. v. Huson, supra. Huson provides for a three prong test. Applying the *92 three prongs of Huson to the case before the bench, in order for the Court to rule in the Department's favor, the Court must find: (1) that Davis v. Michigan established a new principle of law; (2) that denial of retrospective relief would not seriously offend principles of intergovernmental tax immunity; and (3) that granting retrospective relief creates such serious inequity that such inequity outweighs the equity of appropriate redress for those injured by the constitutional violation.
For reasons set forth herein in the discussion on the Plaintiffs' § 1983 claims, this Court finds that the first prong of Huson has been satisfied. The Court, however, does not find that there is any serious inequity in a refund to Plaintiffs that reimburses them for the economic loss incurred as a result of the constitutional violation.
The Plaintiffs, however, seek much more than their economic loss.
The Plaintiffs' claim that any tax at all on their pensions was an illegal tax, and therefore they are entitled to a full refund. Davis did not so hold. The Plaintiff in Davis was not identified as a representative of a class. The Supreme Court opinion in Davis does not specifically define the extent of the refund sought by Davis. The Court concluded that the Michigan Income Tax Act violated principles of intergovernmental tax immunity because it favored retired state government employees over retired federal employees. Michigan had already conceded that, if the Court so held, a refund was appropriate. Based solely on this concession, the Court ruled Davis entitled to a refund. Davis, 109 S.Ct. at 1508-09.
Davis held that the constitutional right the Michigan tax system violated was a right inuring to the United States, not an individual right guaranteed to the Plaintiff. Davis, 109 S.Ct. at 1507; McCulloch v. Maryland, 17 U.S. (4 Wheat.) at 436.
This is not to say that the Plaintiffs have no claim. Davis makes it clear that they do. Davis, supra. But it is not, however, a claim based on a violation of an individual fundamental right.
Plaintiffs' claim to a full refund is premised on the general proposition that legislation determined to be unconstitutional is void. This argument misses the point. "If part of an act is unconstitutional, but by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance will be left intact." State v. Jones, 142 Ariz. 302, 306, 689 P.2d 561, 565 (1984).
The legislation which imposed an income tax on the Plaintiffs' pensions was the same legislation that imposed an income tax on income accrued during the taxable year by taxpayers in general. Would the Plaintiffs have the Court declare the entire State income tax law void? Davis makes it clear that such drastic action is not required. "While invalidation of Michigan's income tax law in its entirety obviously would eliminate the constitutional violation, the Constitution does not require such a drastic solution." Davis v. Michigan, 109 S.Ct. at 1509.
If the Court must focus on specific legislation to invalidate, it would have to be the two exemptions provided in A.R.S. § 43-1022(3) and A.R.S. § 43-1022(4).
In their demand for a full refund, the Plaintiffs ignore what Davis teaches. Even with the concession by Michigan, the award of the court was qualified. According to the Court, Davis was entitled to a refund "to the extent ... [he] paid taxes pursuant to this invalid scheme." Davis, 109 S.Ct. at 1508-09.
Earlier in its opinion, the Supreme Court interpreted § 111 to waive any immunity enjoyed by federal employees from state taxation of their incomes "except to the extent that such taxation discriminates on account of the source of the compensation." Id. at 1505.
The doctrine of intergovernmental tax immunity does not preclude a state from taxing income from federal compensation. Graves, supra. It does preclude discriminatory taxation. It is the discrimination and not the taxation which must be remedied.
*93 There are two elements for determining whether taxing legislation violates the doctrine of intergovernmental tax immunity. The state must seek to impose an income tax on compensation from a federal source, and it must impose a lesser tax on compensation from a state source. Both elements must be present. It is only when the two elements combine that the fatal discrimination occurs.
An argument can fairly be made that such discrimination as is defined herein is the rule rather than the exception in income tax legislation. Rates discriminate which increase as income increases. Within recent memory, the federal income tax has discriminated as between the old and the not so old, the blind and those who see, those who save and those who don't, the sick and the well, the benevolent and the stingy, and those with families and those without. The foregoing list is not exhaustive. Discrimination of this sort has been upheld in the courts if it represents a rational means of achieving a legitimate governmental interest. In most such cases, such discrimination comes about because of a legislative intent to confer a benefit, not to impose a penalty.
In the present case, the Arizona legislature intended to confer a benefit on state pensioners and on federal civil service retirees. It did not identify non-civil service federal retirees in a separate tax class. The tax cost of the benefits conferred on state pensioners and retired federal civil servants fell upon all non-benefiting taxpayers. The discrimination about which Plaintiffs lament with such fervor fell just as hard on every taxpayer not receiving a state or civil service pension as it fell upon the federal retiree.
A government collects in taxes what it decides it needs to bear the cost of government. If a class of taxpayers receives the benefit of a lowered tax, all other taxpayers incur a relative increase. If the Court were to order the refund which the Plaintiffs claim, such an order would be tantamount to excusing federal retirees from state income tax liability on their pensions. This Court, indeed no court, can confer such a magnanimous benefit. If federal retirees are to receive such treatment, it must be authorized by the legislature. Apache County v. Atchison, Topeka & Santa Fe Ry., 106 Ariz. 356, 476 P.2d 657 (1970).
If a constitution requires it, a court may invalidate legislation, but it may not substitute its own scheme for that invalidated. Here, the legislation which created the discrimination which Davis found unconstitutional was that which exempted from taxation state pensions and part of civil service pensions. It is to the impact of these exemptions on the class against whom Davis held the discrimination fell, that the Court must look for a remedy.
There is guidance for the Court in the Davis opinion. Intergovernmental tax immunity does not prohibit the whole tax but "the extent that such taxation discriminates." The Court holds that the measure of the extent that the exemptions set forth in A.R.S. § 43-1022(3) and A.R.S. § 43-1022(4) discriminated against federal retirees is the amount of tax such retirees paid that is greater than they would have had to pay if the provisions which created the discrimination had not been in place. Bade v. Drachman, 4 Ariz. App. 55, 64, 417 P.2d 689, 697 (1966).
If a taxpayer seeks a refund of taxes reflected on an unchallenged return, such refund must be claimed within four years after the return was required to be filed. A.R.S. § 42-115. The Davis decision was announced on March 28, 1989. This lawsuit was filed May 1, 1989. The Court holds that, because of the doctrine of virtual representation, limitations tolled by the filing of the complaint herein are tolled for all taxpayers similarly situated to Plaintiffs, not just the named Plaintiffs themselves.
The income tax for 1984 was due on April 15, 1985. An alert, or alerted, taxpayer might have filed a claim for a refund based on Davis before April 15, 1989. Many taxpayers may have obtained extensions in 1985 which did not make their returns due until after May 1, 1985. Davis mandates that all affected taxpayers receive *94 equal treatment. The Court concludes that it would be less than equal treatment to favor taxpayers because they reacted quickly to the Davis decision, or because they obtained an extension five years earlier for reasons not related to Davis. The Court holds that all affected taxpayers are entitled to refunds for all tax years, 1984 through 1988.
The Court also has some concern that statutory limitations on some of the relevant tax years will be upon us before the decision herein becomes final, and before all affected taxpayers have been informed of their rights hereunder. The Court therefore holds that claims authorized herein may be filed until the first April 15 two years after this decision becomes final or until the expiration of the limitations set forth in A.R.S. § 42-115, whichever is later.
Computation of the Remedy
It is now the Court's task to convert the abstract standard announced above into a formula which the Department can apply to effect the relief directed. In doing so, the Court is limited by the facts supplied by the Department. There are less of these than the Court would have liked. As a result, approximation must, to some extent, replace precision. In the course of this litigation, after this Court announced its decision in principal, the Department was charged with supplying the Court with sufficient data to permit the Court to fashion its remedy. In the main, the Department complied. In some respects, however, the data supplied supported only the Department's theory of an appropriate refund and did not reach that decided by the Court.
The Court, therefore, took judicial notice of some facts not supplied. When the information available to the Court was not sufficiently detailed to be exact and was a necessary element of the computation, the Court applied the data most beneficial to the Plaintiffs. The Court has also determined that further delay to obtain more precise information would be of no benefit to either party. Also, in making its determination herein, the Court has placed a value on simplicity.
Despite all of the foregoing, the Court, after exhaustive review of the data provided, is satisfied that, whatever lack of precision there may be in the Court's formula, it is minimal, and of insignificant consequence.
Most of the data utilized by the Court can be found in the exhibits attached to a document filed by the Department on October 13, 1989. The Document is entitled "Defendants' Opposition to Reconsideration of Refund Ruling and Submission of Refund Plan."
The Court assumes that revenue received by the State from individual income taxes for any year is all of the revenue that is required by the State from such a source for that year. Therefore, if state pensioners had paid income tax on their state pensions and civil service retirees had paid income tax on all of their pensions, all other taxpayers, including the Plaintiffs, would have paid less income tax. The difference between what they paid and what they would have paid is the measure of the refund to which federal retirees are entitled.
Mathematically, the proportionate tax reduction can be defined as a fraction, the numerator of which is the additional tax that would have been collected if no exemptions had been allowed, and the denominator of which is the numerator plus the total tax collected from individuals. Calculations which support the Court's narrative herein are set forth in Appendix A attached to this decision.
The Department has provided the Court with the amount of income tax obtained from individuals for each of the relevant tax years. This is an element of the denominator.
The Department has also provided the Court with the number of civil service retirees resident in Arizona for each relevant tax year. It has not provided any information which would permit the Court to ascertain how many such retirees failed to utilize the full exemption to which they were *95 allowed. In computing the civil service element of both the numerator and the denominator, the Court has assumed that all civil service retirees utilized the full exemption authorized by A.R.S. § 43-1022(4). The civil service element is calculated by multiplying the number of civil service retirees times 200 (.08 times 2,500).
The Department has provided the Court with the total amount of Arizona pensions paid for each of the relevant years. It has not provided the Court with any data that any such income without the exemption would not have been subject to Arizona income tax.
The Department has identified an effective tax rate of 5.6%, but it has not provided the Court with a definition of "effective tax rate." From the information supplied, the Court cannot discern if the effective tax rate is the average rate for all taxpayers for all income or is the average effective rate for pension income.
If Arizona pensioners had been required to pay tax on their pension income, the pension income would have been added to their other income and would have been effectively taxed at the taxpayer's highest rate. An average effective tax rate for total income is of little value in attempting to discern an effective tax rate for less than total income. When total income is taxed at graduated rates which increase as income rises, tax on both additions and subtractions to income should be computed at top rates, not average rates. The Court has computed the Arizona pension element of the numerator and the denominator by multiplying total Arizona pension income by eight percent, the top Arizona rate for all relevant years.
In reducing the thus computed fraction to a proportion for each of the relevant tax years, the Court finds there is very little difference between years in the computed percentage. It varies between a low of .02596 in 1984, and .02810 in 1988. When this difference is translated into a tax refund, it reflects a very small sum of money.
The Court finds that the administrative benefit of using a single constant for all relevant years outweighs the slight cost of more precision to an individual taxpayer whose pension might be at the high end. The Court, therefore, finds an effective hypothetical tax reduction for all years to be 2.75%.
There are two more adjustments to consider. The data available to both the individual taxpayer and the Department is not the tax paid on pension income but the amount of pension income, included in Arizona gross income, or subject to the civil service exemption. From such income data must be determined the tax paid on included pension income.
Once again, the value of simplicity in administration is considered. For purposes of the computation herein, the tax paid on the taxpayer's pension income is computed by multiplying the total pension income included in gross income, or subject to the civil service exemption, times the highest Arizona rate paid by the taxpayer for the computation year.
For all but civil service pensioners, the refund to which the taxpayer is entitled is determined by multiplying the thus computed tax paid on the federal pension by .0275.
Civil service pensioners, however, to the extent they were able to take advantage of the civil service exemption, paid less than they would have had to pay had the unlawful exemptions not been in place. Therefore, in order to put civil service pensioners on the same footing as other federal pensioners, the civil service refund has to be adjusted by subtracting the amount of the tax benefit already received.
For civil service retirees, therefore, after computing the refund as above, an amount equal to the taxpayers top rate times the amount of the exemption utilized must be subtracted. The resulting figure is the refund to which the civil service retiree is entitled.
No refund can be greater than the tax paid.
To any refund paid, the Department is to add interest at rates the Department pays *96 on income tax refunds. The interest is to be computed from the date the tax return on which the tax was paid was due, until the refund is paid to the taxpayer.
Bohn v. Waddell, TX 89-00050

Appendix A

Calculation of Refund Factors
For each tax year, State retirees were allowed a 100% deduction on their retired pay. Federal civil service retirees were allowed a $2500 deduction. All other federal retirees were allowed no deduction.
The value of the State and federal civil service deductions is calculated based on the top Arizona tax rate of 8%. The value in uncollected tax of a $2500 subtraction from income would thus be $200.00. The value in uncollected taxes of the 100% state retiree subtraction is calculated by multiplying gross state pensions for each year times 8%. Each of these figures constitutes the hypothetical revenue the State would have collected had the exemption scheme not existed.
For each tax year, the refund factor requires the number of federal civil service retirees, the gross pensions paid for state retirees, and the actual revenue collected by Arizona on personal income taxes. The tax rate for all calculations is 8%.
All figures are derived from Department of Revenue Annual Reports for the subject years, and from the briefs of the parties.

1984:
Arizona Revenue Collected: $626,244,000.00
# of federal civil service retirees: 32,805
Gross State pensions: $126,620,000.00
State hypothetical revenue: $126,620,000.00 X .08 = $10,129,600.00
Federal Civil Service hypothetical: 32,805 X $200.00 = $6,561,000.00
Calculation: 6,561,000 + 10,129,600 = .02596002
 ______________________________________
 626,244,000 + 6,561,000 + 10,129,600
1985:
Arizona Revenue Collected: $702,957,000.00
# of federal civil service retirees: 33,851
Gross State pensions: $156,228,000.00
State hypothetical revenue: $156,228,000.00 X .08 = $12,498,240.00
Federal Civil Service hypothetical: 33,851 X $200.00 = $6,770,200.00
Calculation: 6,770,200 + 12,498,240 = .02667925
 ______________________________________
 702,957,000 + 6,770,200 + 12,498,240
1986:
Arizona Revenue Collected: $761,422,000.00
# of federal civil service retirees: 35,169
Gross State pensions: $180,983,000.00
State hypothetical revenue: $180,983,000.00 X .08 = $14,478,640.00
Federal Civil Service hypothetical: 35,169 X $200.00 = $7,033,800.00
Calculation: 7,033,800 + 14,478,640 = .XXXXXXXXX
 ______________________________________
 761,422,000 + 7,033,800 + 14,478,640
1987:
Arizona Revenue Collected: $853,980,000.00
# of federal civil service retirees: 36,194
Gross State pensions: $204,051,000.00
State hypothetical revenue: $204,051,000.00 X .08 = $16,324,080.00
Federal Civil Service hypothetical: 36,194 X $200.00 = $7,238,800.00
Calculation: 7,238,800 + 16,324,080 = .XXXXXXXXX
 ______________________________________
 853,980,000 + 7,238,800 + 16,324,080
*97 1988:
Arizona Revenue Collected: $911,618,000.00
# of federal civil service retirees: 37,497
Gross State pensions: $235,715,000.00
State hypothetical revenue: $235,715,000.00 X .08 = $18,857,200.00
Federal Civil Service hypothetical: 37,497 X $200.00 = $7,499,400.00
Calculation: 7,499,400 + 18,857,200 = .02809948
 ______________________________________
 911,618,000 + 7,499,400 + 18,857,200
The average of all the refund ratios is .0270132.
The Court has, for the sake of simplicity, applied an overall ratio of
.0275.