**UNITED STATES of America**

v.

**Ricardo MOLINA, Adadin Caraballo, Jr. and Miguel Tirado.**

**Cr. No. N 88–17 (TFGD).**

United States District Court, D. Connecticut.

June 16, 1988.

Stanley A. Twardy, U.S. Atty., Barbara A. Bailey, Asst. U.S. Atty., for the U.S.

Roger Frechette, New Haven, Conn., for Caraballo.

Harold Sobel, Stanton H. Lesser, Bridgeport, Conn., for Tirado.

John R. Steer, General Counsel, David E. Anderson, Deputy Gen. Counsel, U.S. Sentencing Com'n, Washington, D.C., Richard R. Brown, Hartford, Conn., for Molina.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

### I. *Background*

In an indictment returned by a grand jury on March 9, 1988, the defendants were charged with criminal violations alleged to have occurred after November 1, 1987. Defendants pleaded not guilty to all of the charges and now await trial. After considering all of the briefs submitted in connection with defendants' motion to declare the Federal Sentencing Guidelines unconstitutional, and after hearing oral arguments on the motion in a plenary session before all of the active judges in the District of Connecticut, this Court entered an Order holding certain provisions of the Sentencing Reform Act of 1984 (the "Sentencing Act") unconstitutional. This Memorandum of Decision sets forth the reasons for that Order.

The Sentencing Act, which was enacted as Chapter II of the Comprehensive Crime Control Act of 1984 (the "CCCA"), is effective for all criminal conduct occurring subsequent to November 1, 1987. The act radically alters long-standing federal sentencing practices. For approximately 200 years federal judges have exercised broad discretion in imposing sentences on federal offenders, limited only by statutory maximum penalties and, for certain crimes, statutory minimum penalties. While this sentencing system has facilitated individualized sentencing, it has also been criticized over the years for producing too much sentencing disparity for offenders considered to be similarly situated.

Largely in response to this criticism, Congress enacted the Sentencing Act. The

law alters the existing sentencing system in three fundamental ways. First, it establishes a seven member commission known as the U.S. Sentencing Commission (the "Commission"), which was authorized to, and did, promulgate binding sentencing guidelines (the "Guidelines") that specify a narrow range within which a sentence must ordinarily be imposed for each offense. 28 U.S.C. §§ 991–98. Second, the law provides for a right of appeal to determine whether the correct guideline range was imposed, and, if the sentence is outside the guideline range, whether the sentence is unreasonable in light of the factors to be considered in imposing a sentence. 18 U.S.C. § 3742. Third, the Parole Commission and the concept of parole are abolished. CCCA, Pub.L. No. 98–473, 98 Stat. 2027, Title II, § 218(a)(5) (1984) (codified at 18 U.S.C. §§ 4201–18).

## II. *Discussion*

### A.

Defendants challenge the Sentencing Act on the following grounds: (1) the Sentencing Act violates separation of powers; (2) the Guidelines were promulgated pursuant to an illegal and overbroad delegation of legislative authority; and (3) the Guidelines offend due process because they unduly restrict the availability of probation as a sentencing option. The Court is not persuaded that the Guidelines were promulgated in violation of the delegation doctrine, nor is it persuaded that the Guidelines offend due process by restricting the availability of probation. With all due respect to Congress, however, which has expended substantial energy on this legislation, the Court finds that the Sentencing Act contravenes the separation of powers doctrine.

### B.

■ Although the question of ripeness was not raised by the government, the Court briefly addresses that issue here. The issue of ripeness is strictly a question of timing. "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). A ripeness analysis requires an inquiry into the "fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Thomas v. Union Carbide Agricultural Products, Co.*, 473 U.S. 568, 581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985).

Although the defendants have not as yet been convicted of criminal wrongdoing, the possibility of incarceration is a significant factor entering into their pretrial negotiating strategies. Withholding a decision on this motion would, therefore, work a hardship on them. Furthermore, because the issues involved in this motion are purely legal, and will not be clarified from further factual development, they are fit for adjudication. Since nothing would be gained from postponing a decision, and the public interest would be well served by prompt resolution of the constitutional challenge presented here, the Court finds the matter ripe for adjudication.

### C.

The constitutionally mandated tripartite form of government was created because the Framers recognized that "the accumulation of all powers, legislative, executive and judicial, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57, 102 S.Ct. 2858, 2864, 73 L.Ed.2d 598 (1982) (quoting *The Federalist No. 47*, at 300 (H. Lodge ed. 1888) (J. Madison)). The division of distinct governmental powers among three separate branches provides structural, self-executing checks and balances which guard against the encroachment or aggrandizement of one branch at the expense of another. The separation of powers doctrine that is embodied in the Constitution, however, does not require or envision a total separation of each of the three branches of government. Rather, the Constitution recognizes that in order for the government to operate, each branch

must "function independently within their separate areas, but cooperatively in their relations with each other." *In the Matter of the President's Commission on Organized Crime, Subpoena of Scarfo*, 783 F.2d 370, 375 (3d Cir.1986).

■ The separation of powers doctrine may be violated in either of two ways. As Justice Powell commented in his concurring opinion in *INS v. Chadha*, 462 U.S. 919, 963, 103 S.Ct. 2764, 2790, 77 L.Ed.2d 317 (1983), the principle may be violated when one branch assumes a function that is more properly entrusted to another. *See e.g., Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) (separation of powers violated where Congress reserves for itself removal power over officer charged with execution of laws); *Keller v. Potomac Electric Power Co.*, 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731 (1923) (separation of powers violated where power to amend valuations and rates established by Public Utility Commission conferred on court); *In Re Sealed Case*, 838 F.2d 476, 517 (D.C.Cir. 1988) (separation of powers violated where "special court" was established to appoint special prosecutor and supervise and control prosecutorial office). Or, alternatively, the principle may be violated when one branch interferes impermissibly with the other's performance of its constitutionally assigned duties, as was the case in *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The Sentencing Act violates the separation of powers doctrine in both respects.

■ The Sentencing Act violates the separation of powers by requiring federal judges to assume executive functions more properly entrusted to another branch. As an initial matter the Court finds that, notwithstanding the language in the act placing the Commission in the judicial branch, the Commission is not in fact a judicial agency. The Commission was established as an independent agency in the judicial branch, apparently because of Congress' "strong feeling that, even under this legislation, sentencing should remain primarily a judicial function." S.Rep. No. 225, 98th Cong., 1st Sess. 159, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3342. Placement of the Commission in the judicial branch, although entitled to deference, is not conclusive. The proper focus of inquiry regarding the placement of the Commission requires an examination of the substance of the character and nature of the composition of the Commission and the responsibilities assigned thereto. *See Bowsher*, 106 S.Ct. at 3191–92; *Chadha*, 462 U.S. at 952–54, 103 S.Ct. at 2784–86. Congress' placement of the Commission in the judiciary simply does not bear scrutiny.

The Commission is comprised of seven voting members, at least three of whom must be federal judges, with the Attorney General, or his designee, serving as an *ex officio*, non-voting member. The voting members are appointed by the President and, most significantly, they are removable by him for good cause. Although somewhat limited, the removal power, at least arguably, makes the commissioners answerable to, and therefore under the control of, the executive branch. *See Bowsher*, 106 S.Ct. 3181.

The Commission also functions in an executive capacity. Its task is to interpret a law enacted by Congress, and to implement the legislative mandate embodied therein. This is the very essence of execution of the law. *Id.* at 3192. The Commission's argument, as *amicus curiae*, that the promulgation of the Guidelines is in aid of the judiciary, carries no force, for Congress has long established sentencing policies. Furthermore, although it is true that many rules promulgated by the federal courts under the Rules Enabling Act have a significant impact on the litigants, the fact remains that these rules govern court administration. To extend this exception to the Guidelines, which clearly affect a liberty interest of convicted criminals and establish important public policy in the area of criminal jurisprudence, is simply to go too far.

Accordingly, the Court finds that the Commission is not in fact a judicial agency, and that it is charged with performing executive functions. Other than the fact that

the Commission includes three judges and that the commissioners are paid through the judicial branch, the judiciary plays no significant part in the functioning of the Commission. Furthermore, if necessary, because the Court believes that Congress would have enacted the remainder of the Sentencing Act without the language locating the Commission in the judiciary, the Court would not hesitate to sever such language. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987). The Court hastens to add that had it found that the Commission was truly a part of the judiciary, the Sentencing Act would have died a swift death under the separation of powers doctrine.

The Court next considers whether the Sentencing Act's mandate that three federal judges participate in the promulgation of the Guidelines violates the separation of powers. It is well established under case law that Congress cannot impose a legislative or executive duty on an Article III court. *See e.g., Keller*, 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731 (1923); *In Re Sealed Case*, 838 F.2d at 517. The question now under consideration is whether Congress can impose such duties on judges. The Court is of the view that it cannot.

The Supreme Court appears to have squarely addressed this question on only one occasion. The circumstances surrounding that case are somewhat elusive and quite intriguing. In *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792), the Court was faced with a 1792 statute that conferred on Circuit Courts the administrative duty of settling pension claims of Revolutionary War veterans. The Court held the matter under advisement until the 1793 term, and in 1793, in the wake of several Circuit Court decisions questioning the constitutionality of the statute, Congress amended the statute. As a result of this amendment the issue in *Hayburn's Case* was rendered moot. In a footnote appended to *Hayburn's Case*, three Circuit Court

decisions addressing the 1792 statute are reported. Each of these decisions finds that the statute impermissibly conferred nonjudicial power on the courts. The decisions are divided, however, on the question of whether the statute can be construed as conferring the power on judges in their individual capacities.

In 1794, in the case of *United States v. Yale Todd*, the Supreme Court, in what appears to be an unreported decision recounted in a footnote appended to *United States v. Ferreira*, 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1851), held that the 1792 statute referred to above could not be construed as conferring the non-judicial administrative powers on judges in their individual capacities [1]. Thus, to this Court's knowledge, the only case addressing the question of whether Congress can impose non-judicial duties on judges in their individual capacity, appears to have held that it could not.

This Court understands the separation of powers doctrine as prohibiting the assignment to the judiciary, whether as a court or through its individual members, of any duties except those that are properly judicial. Our tripartite form of government, and in particular an independent judiciary, was designed to protect individual liberties from encroachment occasioned by the unchecked accumulation of power. The aspect of the separation of powers principle presently under consideration, namely the prohibition against expanding the role of the judiciary, strives to safeguard this liberty interest in two respects. First, it attempts to prevent other branches from draining judicial power by precluding those branches from diverting judicial attention from the judiciary's sole duty of deciding cases and controversies. Second, it jealously guards judicial independence which is the hallmark of the judiciary. Erosion of this principle of separation of powers will inevitably lead to an undermining of public confidence in the judiciary and in turn of public respect for the rule of law.

---

[1] It is interesting to note that four of the five Justices who were present at the *Yale Todd* decision also took part in the Circuit Court decisions reported in the footnote to *Hayburn's Case*.

In announcing this principle, the Court is mindful of the flexibility embodied in the separation of powers principle. Where judicial cooperation is required and called for it will surely not be withheld. Furthermore, the principle is pliable enough to embrace an assignment to the judiciary that is truly a proper judicial function. This Court simply cannot square the imposition of executive duties on judges with the separation of powers doctrine. In the long term, the structural protections embodied in the Constitution must be respected in order to preserve judicial independence.

■ The Sentencing Act also violates separation of powers by interfering impermissibly in the judiciary's performance of its constitutionally assigned duties. Under the so called "functional approach" articulated in *Nixon*, 433 U.S. at 443, 97 S.Ct. at 2790, where a law interferes with the proper functioning of a branch, the court must determine the extent to which it prevents that branch from accomplishing its constitutionally assigned functions. Where a potential for disruption is found to exist, then the court must "determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Id.* Although this test is similar to the test previously discussed, and indeed the analyses overlap, the primary focus of this test is on the interference with the judiciary, whereas the previous test focuses on the proper distribution of the constitutionally delegated functions and the effect of the law on the structural checks and balances that are inherent in our tripartite form of government.

As previously mentioned, it is well established that "[i]mpartiality is one of the central, constitutionally-ordained, requirements of the federal judicial office." *In Re Application of the President's Commission on Organized Crime, Subpoena of Scaduto*, 763 F.2d 1191, 1197 (11th Cir. 1985). The requirement that judges participate in the promulgation of mandatory sentencing guidelines, especially where the judges may receive a pay raise and are subject to executive removal, leads this Court to the inescapable conclusion that the Sentencing Act impairs judicial impartiality, both in fact and in the appearance thereof. *See United States v. Estrada*, 680 F.Supp. 1312, 1332–36 (D.Minn.1988). Participation of judges/commissioners also provides the potential for diverting judicial attention from deciding cases and controversies.

The government's reliance on *Scarfo*, 783 F.2d 370, is misplaced in light of the mandatory nature of judicial participation under the Sentencing Act. The court in *Scarfo* relied heavily on the fact that the judge served voluntarily and in his individual capacity. Although not performing Article III functions, the judges/commissioners are sitting as members of the judiciary and not in their individual capacities. They are included because of their specialized knowledge and are recommended by the Judicial Conference. Furthermore, recusal is no answer to the problem of impartiality because Congress cannot be permitted to force judges into situations which cry out for recusal. The mingling of judges in executive functions dilutes judicial power. Such an aberration of the constitutional structure must be supported by an overriding need.

Although the Court has no doubt that federal judges could have, and indeed have, made valuable contributions to the reexamination of sentencing policies, it nevertheless finds that there is no overriding need to mandate judicial involvement in the promulgation of the Guidelines.

### III. *Conclusion*

■ For the reasons set forth above, the Court holds that the portion of the Sentencing Act which authorizes the Commission to promulgate the Guidelines, 28 U.S.C. §§ 991–98, contravenes the separation of powers doctrine. It follows *a fortiori*, that the Guidelines, which were promulgated pursuant to an unconstitutional statutory provision, are themselves null and void. Those portions of the Sentencing Act that require courts to impose the Guidelines must also fall as null and void. Thus, 18 U.S.C. §§ 3553(a)(4) and (5), (b), (c)(1) and

(2), and the last sentence of paragraph (e) are unconstitutional. The Court will now endeavor to examine which portions of the CCCA survive this constitutional challenge.

 When a court declares a portion of a law unconstitutional, it should strive to sever only those provisions of the law that are objectionable. The determination of whether an unconstitutional provision is severable is essentially a question of legislative intent and, because severing is preferable to striking an entire act, the presumption is in favor of severability. *Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984) (plurality opinion). The standard for determining the severability of an unconstitutional provision is well established: "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as law." *Alaska Airlines,* 107 S.Ct. at 1480 (quoting *Champlin Refining Co. v. Corporation Commission of Oklahoma,* 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932)).

 With these standards in mind, the Court has no doubt that the provisions here declared unconstitutional are severable from the legislative scheme of which the Sentencing Act was but a part. However, in order to make what is left of the Sentencing Act fully operative as law, consistent with the legislature's intent, the Court believes that the repeal of the Parole Commission, CCCA, title II, § 218(a)(5), must also be severed. In enacting the Sentencing Act, Congress was primarily concerned with reducing sentence disparity. The Parole Commission was created by Congress in an attempt to ameliorate sentencing disparity. Furthermore, the fact that the effective date of the repeal of the Parole Commission was coordinated with the effective date of the Guidelines, evidences the legislature's intent to keep the Parole Commission operative absent the Guidelines.

Similarly, the Court believes that Congress would not have amended Rule 35 of the Federal Rules of Criminal Procedure to eliminate the defendant's right to file a motion to reduce his sentence, had it known that sentences would not be imposed under the Guidelines. Rule 35, as it previously existed, was designed to reduce sentencing disparity and the effective date of the amendment to the Rule was keyed to the effective date of the Guidelines. Accordingly, the Court shall construe § 215(b) of the Sentencing Act, Pub.L. No. 98–473, as retaining what was previously Rule 35(b), and as redesignating that paragraph as paragraph (c) [2].

To the extent the decretal portion of this Memorandum of Decision is inconsistent with the Court's Order dated May 6th, 1988, that Order is VACATED.

---

**2.** Based on the Court's holding in this case, it is possible that other provisions of the Sentencing Act may have to be severed. Those provisions are not now before the Court and, therefore, the Court need not deal with them here.