167 Ariz. 344 (1991)
807 P.2d 1
John L. BOHN, et al.
v.
Paul WADDELL, et al.
No. TX 89-00050.
Tax Court of Arizona.
March 7, 1991.
Bonn & Jensen, Chartered by Robert A. Jensen/Brian A. Luscher, Phoenix, Eugene O. Duffy, Milwaukee, Wis., for plaintiffs-appellants.
Attorney General by William D. Hostetler/Gail H. Boyd, Phoenix, for defendants-appellees.
MORONEY, Judge.
On April 6, 1990, this Court, pursuant to A.R.S. § 12-171, issued its Opinion on certain issues presented to the Court by the litigants. Among other things, the Court decided that "the scheme for taxing state and federal pensions, as existed before the recent amendment to A.R.S. § 43-1022, was in violation of federal law, and further, was in violation of the federal constitutional *345 doctrine of intergovernmental tax immunity." Bohn v. Waddell, 164 Ariz. 74, 80, 790 P.2d 772, 778 (Tax 1990). The Court also held that the Taxpayers' remedy for the constitutional violation was a refund of the excess tax paid by the Taxpayers because of the discriminatory scheme.
After the foregoing Opinion was published, the U.S. Supreme Court announced decisions in four cases, all of which involve state tax issues. The four cases were McKesson Corp. v. Florida Div. of Alcohol & Tobacco, 495 U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990); American Trucking Ass'ns, Inc. v. Smith, 495 U.S. ___, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion); Ashland Oil, Inc. v. Caryl, 495 U.S. ___, 110 S.Ct. 3202, 111 L.Ed.2d 734 (1990) (per curiam); and National Mines Corp. v. Caryl, 495 U.S. ___, 110 S.Ct. 3205, 111 L.Ed.2d 740 (1990) (per curiam). Hereafter, the Court will refer to the four cases as McKesson, Smith, Ashland Oil, or National Mines.
On the strength of law announced in these four U.S. Supreme Court cases, the Taxpayers made a motion that the Court withdraw its Opinion from publication and reconsider its ruling that the Taxpayers were entitled to less than a full refund of all taxes paid on their federal pensions. The Court agreed to reconsider its decision and invited further briefing from the litigants. The sole decision presented to the Court for reconsideration was whether or not the Taxpayers should receive a full refund of all taxes paid on their federal pensions.
The Court has reconsidered its earlier decision in light of the four U.S. Supreme Court cases cited. The Court denies the relief requested by the Taxpayers. The Court finds no authority in any of the four cases for the position urged by the Taxpayers. The Court further affirms the decisions made previously and announced in its Opinion of April 6, 1990.
In this Opinion the Court seeks not only to review the application to the case before the bench of the four U.S. Supreme Court opinions cited, but also to clarify the Court's rationale in reaching the decision it has reached with respect to the Taxpayers' remedy.
All of the U.S. Supreme Court cases cited concern state taxes which the Supreme Court, either in the subject case or in an earlier one, had ruled violated the commerce clause of the federal constitution. McKesson was concerned with what a state owed to a taxpayer discriminated against by a state law determined to be unconstitutional. The other three cases concerned the non-retroactive application of a Supreme Court decision overturning a state tax.
McKesson involved a Florida liquor excise tax which provided for rate reductions for liquor manufactured from agricultural products commonly grown in Florida, and used in alcoholic beverages produced in Florida. McKesson was a producer of alcoholic beverages manufactured from products not commonly grown in Florida, and therefore, did not enjoy the rate reductions granted to some of its competitors. When McKesson challenged Florida's scheme, the Florida Supreme Court held the scheme unconstitutional, but denied McKesson a refund. McKesson appealed the denial of a refund to the U.S. Supreme Court.
Florida law required a taxpayer seeking to challenge the validity of the liquor excise tax to pay the tax as assessed and effectively pursue its challenge postpayment. Florida also had in place a general statute which provided for refunds for the overpayment of any tax. This statute is the vehicle McKesson used to get to court. McKesson, 110 S.Ct. at 2243.
Justice Brennan succinctly announced the holding of the Supreme Court in the following language:
Our precedents establish that if a State penalizes taxpayers for failure to remit their taxes in timely fashion, thus requiring them to pay first and obtain review of the tax's validity later in a refund action, the Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional. We therefore agree with petitioner *346 that the state court's decision denying such relief must be reversed.
Id. 110 S.Ct. at 2242.
Since Arizona income taxes are not required to be paid before a determination of the validity of the tax, A.R.S. § 42-122(A); A.R.S. § 42-124(B)(2), McKesson does not govern any issue presented in the case before the bench. Certain propositions announced in McKesson, however, are useful in analyzing the federal law which does apply.
The authorities reviewed in McKesson by which the court defined the taxpayers' rights, are all predicated on a coercive prepayment. As an example, the McKesson Court described the holding in Montana Nat. Bank of Billings v. Yellowstone County, 276 U.S. 499, 48 S.Ct. 331, 72 L.Ed. 673 (1928), as follows: "One forced to pay a discriminatorily high tax in violation of federal law is entitled, in addition to prospective relief, to a refund of the excess tax paid  at least unless the disparity is removed in some other manner." McKesson, 110 S.Ct. at 2249.
Even though the stated proposition rests upon a predicate that does not exist in this case, this Court has no quarrel with restating the proposition: In general, one who pays a discriminatorily high tax in violation of federal law is entitled, in addition to prospective relief, to a refund of the excess tax paid  at least unless the disparity is removed in some other manner.
There are, however, exceptions to this general proposition. In an appropriate case, in deciding whether to apply the rule cited, the Court must consider all factors which affect, or may be affected by, the decision to be made. In the case at bench, such factors might include the inherent differences between an excise tax and an income tax, limitations on a court's authority, and the impact of the court's ruling on a state's overall tax scheme.
The most relevant aspect of McKesson is that it did not prescribe a remedy. It left it to Florida to fashion one consistent with the constitutional parameters set forth in the opinion. McKesson, 110 S.Ct. at 2258.
The tax involved in Smith was a highway use tax in Arkansas which was imposed as a flat tax. While the Arkansas case was proceeding through the courts, the U.S. Supreme Court in American Trucking Ass'ns, Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), held that a flat highway use tax was unconstitutional as a violation of the commerce clause. The issue in Smith was whether or not the Scheiner decision would be applied retroactively in Arkansas. In Smith, the Supreme Court was divided in a somewhat unusual manner. Four Justices felt that, as a matter of substantive federal law, Scheiner should be held prospective only, and four Justices held the opposite.
Justice Scalia cast the deciding vote that Scheiner should not be applied retroactively. Unlike the eight other Justices, Justice Scalia felt that the Supreme Court should abandon its philosophy of negative enforcement of the commerce clause and should not hold a state statute in violation of the commerce clause unless it is in conflict with a congressional enactment. For that reason, Justice Scalia did not feel that the Arkansas tax (nor the Pennsylvania tax overturned in Scheiner) was a violation of the commerce clause in the first place. Because of Justice Scalia's vote, the four justices who favored non-retroactive application of Scheiner constitute the plurality, and the four Justices who favored retroactive application of Scheiner constitute the dissent.
A plurality opinion is not thought to be authoritative precedent. Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1976). As Justice Rehnquist observed in Texas v. Brown, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1982), a four Justice plurality opinion by the Court is not a binding precedent, but "as the considered opinion of four Members of this Court it should obviously be the point of reference for further discussion of the issue." See also United States v. Pink, 315 U.S. 203, 216, 62 S.Ct. 552, 558, 86 L.Ed. 796 (1941) (decision of equally divided Court not authoritative precedent). Even so, there is more grist for apposite *347 analysis in Smith than in any of the other three cases.
The plurality in Smith cites Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), as authority for its non-retroactive holding. Relying on the same authority, the Arkansas Supreme Court had previously reached the same result. Huson prescribes a three-prong test to determine whether the invalidation by a court of a law should apply retroactively. Id., 404 U.S. at 106, 107, 92 S.Ct. at 355, 355. Under the third prong of Huson, the court considers the equities of retroactive application. Smith, 110 S.Ct. at 2332. Bohn v. Waddell, 164 Ariz. at 91, 92, 790 P.2d at 789, 790.
In discussing the third prong, the Arkansas court found that a total refund would allow out-of-state truckers "an unconscionable windfall far in excess of a fair recovery for the discrimination they may have suffered due to the tax." Smith, 110 S.Ct. at 2329 (quoting American Trucking Ass'ns v. Gray, 295 Ark. 43, 47, 746 S.W.2d 377, 379 (1988)). The same conclusion can be drawn in the case before the bench.
In Smith, the only question before the Court was whether the Arkansas court applied Chevron correctly. The plurality decided that it had; the dissent disagreed.
In deciding that Scheiner should not apply retroactively, the plurality decided that Scheiner overturned what had been settled case law. The plurality distinguished McKesson from Scheiner on that ground, noting that Florida should have known that its tax was unconstitutional when it enacted it. Smith, 110 S.Ct. at 2333; McKesson, 110 S.Ct. 2238 at 2255.
The plurality was motivated by its perception that retroactive application of Scheiner in Arkansas would be manifestly unjust. The dissent was concerned over the disparate treatment by the court in two cases with a virtually identical issue, where the second case was in the pipeline when the first case (Scheiner) was decided.
The dissent distinguishes between two kinds of retroactive effect. One is a rule of federal constitutional law which is an element in the decision which the Court makes in its assessment of unconstitutionality. The other type of retroactive effect occurs by virtue of the remedy to be applied once the case is decided. Scheiner invalidated a Pennsylvania tax virtually identical to the Arkansas tax in Smith. In Scheiner, the court did not hold its determination to be non-retroactive. The dissent felt that fairness demanded that the same decision be made in Smith. The dissent would hold that every case which rules a law unconstitutional should apply retroactively to every controversy that has not been laid to rest by an applicable statute of limitations or by a final judgment. The dissent suggests that there may be relief in the law of remedies from an unfair or harsh result.
The dissent distinguishes Huson as a remedy case and further distinguishes it because it involves a statute of limitations, an area in which federal courts have much equitable discretion.
In Ashland Oil, the issue was whether Armco, Inc. v. Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984), should be applied retroactively. The tax in this case was a West Virginia gross receipts tax which Armco had invalidated. In Ashland, the Supreme Court found that Armco did not establish a new principle of law. Ashland, 110 S.Ct. at 3205. Therefore, under the law as determined by the plurality in Smith, Armco would not apply retroactively. Id. The dissent in Smith would apply any constitutional decision retroactively to cases on direct review. Ashland, 110 S.Ct. 3204 (citing Smith, 110 S.Ct. at 2352 (Stevens, J., dissenting)). Therefore under either theory, Armco should apply retroactively.
National Mines involved the same tax and the same issue as Ashland Oil, that is, whether Armco should be applied retroactively. The U.S. Supreme Court, relying on its decision in Ashland, held that it should. National Mines, 110 S.Ct. at 3205.
Many issues were raised by the litigants in this case. The most significant of these issues were analyzed and decided in this Court's Opinion of April 6, 1990. The remainder, *348 nearly as many, were resolved by minute order of the Court on April 6, 1990. The only issue in the case, however, of any real significance to the Taxpayers is the issue which the Court now has reconsidered.
Davis v. Michigan, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), made the invalidation of the Arizona tax scheme a certainty. Once that low hurdle is leaped, the only decision that can benefit the Taxpayers is what relief they are to get as a result of the invalidation. The Taxpayers have argued that they are entitled to a refund of all taxes paid on their federal pensions. This Court has held otherwise, and now reaffirms its earlier decision.
The Taxpayers have never precisely explicated to the Court their argument in favor of full refunds. Nevertheless, the Court believes it can be simply stated as follows. The doctrine of intergovernmental tax immunity prohibits a discriminatory state tax on income received from the federal government. The invalidated Arizona tax scheme imposed such a tax. Therefore, the tax imposed is void and must be refunded.
The proposition that an unconstitutional act is void appears to have first been announced in the early constitutional landmark, Marbury v. Madison, 5 U.S. 137, 1 Cranch. 137, 2 L.Ed. 60 (1803). It was reaffirmed in Ex Parte Siebold, 100 U.S. 371, 10 Otto 371, 25 L.Ed. 717 (1879), and Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886).
In Norton v. Shelby County, supra, the rule was stated with a measure of rhetorical elegance as follows: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." 118 U.S. at 442, 6 S.Ct. at 1125.
Even though federal law must be applied to decide the issue, the proposition apparently relied upon by the Taxpayers is well set forth in the state case of Crane Co. v. Arizona Tax Comm'n, 63 Ariz. 426, 442, 163 P.2d 656, 662 (1945). "The general rule appears to be that an unconstitutional statute is in reality no law and is wholly void, and is inoperative as if it had never been passed."
Thus set forth, the general rule is stated in uncompromising language. Constitutional law, however, is conceptual, not perceptual. In holding a law unconstitutional, the U.S. Supreme Court has often not applied the general rule. Lemon v. Kurtzman, 411 U.S. 192, 197-98, 93 S.Ct. 1463, 1467-68, 36 L.Ed.2d 151 (1973).
In Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), the court made the following comment:
The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. Norton v. Shelby County, 118 U.S. 425, 442 [6 S.Ct. 1121, 1125, 30 L.Ed. 178]; Chicago, I. & L. Ry. Co. v. Hackett, 228 U.S. 559, 566 [33 S.Ct. 581, 584, 57 L.Ed. 966]. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,  with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive *349 statement of a principle of absolute retroactive invalidity cannot be justified.
308 U.S. at 374, 60 S.Ct. at 318-19.
Arizona also has repudiated the absolutism of the general rule as expressed in Crane. In Shreve v. Western Coach Corp. 112 Ariz. 215, 216-17, 540 P.2d 687, 688-89 (1975), the court said: "Thus it was said that an unconstitutional law ... `is, in legal contemplation, as inoperative as though it had never been passed.' This Blackstonian view, based on the theory that judges discover, rather than make the law, has been considerably eroded with time, and is not the law in Arizona." (citations omitted). Also in Selective Life Insurance Co. v. Equitable Life Assur. Soc., 101 Ariz. 594, 602, 422 P.2d 710, 718 (1967), the Court stated: "Arizona has rejected the doctrine that acts performed under an unconstitutional statute must always be invalid."
The issue of non-retroactivity as faced in three of the four U.S. Supreme Court cases under study is itself an example of the consideration which the Supreme Court must make in ruling on the effect of a determination of invalidity. As Justice O'Connor indicated in the plurality opinion in Smith, the determination of the effect of such a ruling requires a hard look at whether the application of the general rule would be unjust. Smith, 110 S.Ct. at 2332.
This Court is of the opinion that federal law requires that a court, in invalidating a law on constitutional grounds, must weigh the effect of its retroactive application, and, if it concludes substantial inequities will result from such an application, it may hold its ruling to be non-retroactive. Even if it holds its ruling to be retroactive, it should qualify the retroactive application of its ruling if equitable considerations require that it do so.
This ruling is in accord with the three-prong approach of Chevron Oil Co. v. Huson, 404 U.S. at 106, 92 S.Ct. at 355, since both the first and second prongs are themselves equitable considerations. This ruling is also in accord with both the plurality and the dissent in Smith. The Court, therefore, need not decide what the U.S. Supreme Court in Smith could not: whether Huson defines constitutional law or is a remedy case. Since Arizona income taxes were not coercively extracted as a condition of challenging the law found unconstitutional, and since this is not a commerce clause case, the Court need not attempt to fashion a remedy as dictated by McKesson. Huson is applicable if its tests are met whether it is a remedy case or not.
In determining the constitutional law effect of the invalidation of state law, federal law applies. Smith, 110 S.Ct. at 2330. Applying federal law, the Court holds that if equitable considerations do not produce an unjust result, the general rule as stated in Crane will apply.
In determining the remedy for the plaintiff who obtains a decision that a state law is unconstitutional, state law applies. As the Supreme Court stated in Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 8, 109 S.Ct. 890, 896, 103 L.Ed.2d 1 (1989),
It is not for us to decide whether the correct response as a matter of state law to a finding that a state tax exemption is unconstitutional is to eliminate the exemption, to curtail it, to broaden it, or to invalidate the tax altogether.
The mission, then, of this Court is clear. It must determine, applying federal law, the effect of Davis on Arizona individual income tax law. Unless the effect is non-retroactivity, the Court must then determine a remedy applying state law.
In Davis, the state conceded that a refund would be appropriate if the court determined that the Michigan tax scheme was unconstitutional. Davis, 489 U.S. at 817, 109 S.Ct. at 1508. Therefore, Davis did not decide non-retroactivity either way. It did, however, express a qualification if the decision were to have retroactive effect. Davis held that "the Constitution does not require" a state to invalidate its entire income tax law. Davis, 489 U.S. at 817, 109 S.Ct. at 1508.
In this case, the general rule cannot be applied absolutely to reach the result urged by the Taxpayers. The statute which imposes a tax on the Taxpayers' federal pensions *350 is A.R.S. § 43-1011. If the general rule is applied and A.R.S. § 43-1011 is declared void, the result the Taxpayers want has been achieved. It has also voided all pre-Davis individual income taxation in Arizona. Davis said specifically that "such a drastic solution" was not necessary. Davis, 489 U.S. at 817, 109 S.Ct. at 1508.
If the Court holds that Davis invalidates something less than the statute which imposed the offending tax, then the Court must determine what its holding is going to invalidate and just what the impact of such an invalidation is to be. In doing so, the Court must determine whether its holding will produce an unjust result. In short, the effect of invalidating law must be determined by applying principles of equity.
In this case, the Court applies the general rule, holding that the invalidation of A.R.S. § 43-1011 is, by the very words of Davis, too drastic a course for the Court to take. However, the Court can remove the unconstitutional impediment proscribed by Davis by holding invalid former A.R.S. § 43-1022(3) and A.R.S. § 43-1022(4). This the Court has effectively done in its ruling on April 6, 1990. Bohn v. Waddell, 164 Ariz. 74, 790 P.2d 772 (Tax 1990). When a law is determined to be void because it is in violation of the constitution, and the constitutional impediment can be removed by the invalidation of alternative statutory provisions, those provisions will be invalidated which do the least violence to the statutory scheme. State v. Prentiss, 163 Ariz. 81, 786 P.2d 932 (1989) (entire statute should not be declared unconstitutional if unconstitutional portions are severable); accord Cohen v. State, 121 Ariz. 6, 588 P.2d 299 (1978); State v. Dykes, 163 Ariz. 581, 789 P.2d 1082 (App. 1990); United States v. Molina, 688 F. Supp. 819, 825 (D.Conn. 1988) (court should strive to sever only those provisions of the law that are objectionable).
Such a step makes taxable in retrospect Arizona pensions and the first $2,500.00 of civil service pensions. This satisfies the prospective Davis mandate of equal treatment. Davis, 489 U.S. at 817-18, 109 S.Ct. at 1508-09.
Since the Court has applied the general rule, the remedy is to be determined by state law, subject to the constitutional parameters imposed by the federal constitution and federal law interpreting it. The effect of Davis, as decided herein, is that the subtractions from Arizona income authorized in former A.R.S. § 43-1022(3) and A.R.S. § 43-1022(4) are void. Therefore, the State of Arizona has failed to collect taxes from Arizona pensioners and from civil service pensioners, for which such pensioners were liable. It could be argued that such a failure constitutes a discriminatory enforcement of the income tax laws.
Income taxes are inherently discriminatory. A graduated income tax discriminates against those in the higher brackets, and in favor of those in the lower ones. The failure to collect taxes from Arizona pensioners and civil service pensioners discriminated against not only non-civil service federal pensioners, but against every taxpayer in whatever category who was required to pay an Arizona tax on income. This discrimination occurred because a legislated tax benefit has been determined to be unlawful. Where a tax benefit made available to a minority of taxpayers is invalidated, the equal protection clause of the Fourteenth Amendment does not require a retroactive invalidation of the entire tax scheme because of the discrimination created by the invalidation of the benefit. The applicable federal law in this circumstance is clearly that set forth in Davis. Davis, as has been stated, does not require such a drastic result.
To hold that the Taxpayers are entitled to the full refund they demand would be to create a retroactive tax benefit. The Court is of the opinion that such a step would be beyond the power of this Court or, indeed, any court. The bestowal of income tax benefits is solely the province of the legislature. The evidence presented to the Court demonstrates that such a remedy would have a devastating effect on state finances, the cost of which would have to be borne by all taxpayers, not just those who have enjoyed Arizona pension income. It is clear to the Court that, because of the *351 grievous fiscal disruption such a tax benefit would cause, it is inconceivable that, had the legislature known that the disparate treatment of government pension income was unconstitutional, it would ever have extended the benefit to federal pensioners. It would simply have enacted no benefit at all, or a partial one, as it did, post-Davis. A.R.S. § 43-1022 (West Supp. 1990).
Because of the adverse financial consequences on other taxpayers not connected with this case, of a remedy such as the Taxpayers claim, and because of the unwarranted benefit to the Taxpayers from such an order, the Court finds that the decision the Taxpayers want would be most unjust. If this were to be the effect of Davis required by federal law, then the third prong of Huson would be met, and Davis would apply non-retroactively. The remedy sought by the Taxpayers is not required by either state or federal law.
The Taxpayers, however, did suffer an injury because of the discriminatory tax. They paid more tax than they would have had to pay had the voided subtractions not been in place. Therefore, they are entitled to be refunded the difference between what they paid and what they would have paid. The formula set forth in the Court's Opinion of April 6, 1990, attempts to define such a refund.
In McKesson, Florida argued that, had Florida been aware that its tax was unconstitutional, it would not have enacted the discriminatory favorable rates. Therefore, all taxpayers would have been taxed at the higher rate and so the favored taxpayers would have paid the same thing as the McKesson taxpayers. Therefore, the McKesson taxpayers were not injured and should not have any tax refunded.
The Taxpayers point out that the McKesson court rejected this argument. There are at least three distinguishing factors between this case and McKesson. The Supreme Court felt that McKesson's injury flowed, not from the fact that it had to pay more tax than the favored taxpayers, but from the fact that as a result it experienced and suffered an economic disadvantage because the favored taxpayers were commercial competitors. That circumstance does not exist here.
Although Florida claimed that the invalidation of its tax was not reasonably preforetold by earlier decisions of the court, it is clear from a reading of the McKesson Opinion that Justice Brennan, at least, considered the Florida scheme a thinly veiled attempt to retain in place a tax scheme that had been invalidated in Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). McKesson, 110 S.Ct. at 2255. It was the opinion of the McKesson Court that Florida should have known that its scheme was a constitutional violation. Smith, 110 S.Ct. at 2333.
In this case, the Court has held that Davis announced a new principle of law. Bohn v. Waddell, 164 Ariz. 74, 86, 790 P.2d 772, 783 (Tax 1990). Finally, the rejected Florida solution resulted in no remedy at all.
McKesson specifically approved the approach this Court has taken. McKesson, 110 S.Ct. at 2251-52. In Smith, Justice Stevens said:
Our opinion today in McKesson Corp. v. Division of Alcoholic Beverages, makes clear that the Federal Constitution does not require the State to refund the entire tax that was unconstitutionally exacted from petitioners, but only to refund the discriminatory portion or otherwise adjust the tax to render it non-discriminatory.
Smith, 110 S.Ct. at 2346 n. 2 (Stevens, J., dissenting).
The remedy is also authorized under Bade v. Drachman, 4 Ariz. App. 55, 63-64, 417 P.2d 689, 697 (1966); and Pittsburgh and Midway Coal Mining Co. v. Department of Revenue, 161 Ariz. 135, 776 P.2d 1061 (1989). The Court, therefore, reaffirms, in light of the four U.S. Supreme Court cases reviewed, the decisions made and announced in its earlier Opinion in this case, Bohn v. Waddell, 164 Ariz. 74, 790 P.2d 772 (Tax 1990).